UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

THOMAS DAGONESE,

          Plaintiff,

-v-

COMMISSIONER OF SOCIAL SECURITY,

          Defendant.

_____

18-CV-1021-MJR
DECISION AND ORDER

Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 17)

Plaintiff Thomas Dagonese ("plaintiff") brings this action pursuant to 42 U.S.C. §§405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, plaintiff's motion (Dkt. No. 10) is denied and defendant's motion (Dkt. No. 15) is granted.

## BACKGROUND[1]

Plaintiff filed for DIB and SSI on November 20, 2014, alleging disability beginning June 30, 2010. (Tr. 15, 185-92)[2] His claim was initially denied, and plaintiff then

---

[1] The Court presumes the parties' familiarity with plaintiff's medical history, which is summarized in the moving papers. The Court has reviewed the medical record, but cites only the portions of it that are relevant to the instant decision.

[2] References to "Tr." are to the administrative record in this case. (Dkt. No. 7)

appeared and testified at an administrative hearing on June 8, 2017, during which he amended the alleged onset date to May 8, 2012. (Tr. 15, 18, 34-94, 99-114, 266-72, 307-09) Administrative Law Judge ("ALJ") Benjamin Chaykin issued an unfavorable decision on August 2, 2017. (Tr. 12-33) The Appeals Council subsequently denied review on July 18, 2018. (Tr. 1-6) This action followed. (Dkt. No. 1)

The issue before the Court is whether there was substantial evidence to support the ALJ's decision that plaintiff was not under a disability as defined by the Act.

## DISCUSSION

I.  *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (*quoting Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

2

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II.     *Standards for Determining "Disability" Under the Act*

A "disability" is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §423(d)(2)(A). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical

3

opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (*quoting Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §404.1520(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §404.1520(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §404.1520(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §404.1520(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.*

4

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §404.1520(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §404.1545(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §404.1520(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §404.1520(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.* If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.*

The burden through steps one through four described above rests on the claimant. If the claimant carries their burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

III. *The ALJ's Decision*

The ALJ followed the required five-step analysis for evaluating plaintiff's claim. Under step one, the ALJ found that plaintiff did not engage in substantial gainful activity since the alleged onset date of May 8, 2012. (Tr. 18) At step two, the ALJ found that plaintiff had severe impairments of: (1) obesity; (2) bilateral knee osteoarthritis, status post total knee replacements; (3) left Achilles' tendinosis; (4) affective disorder; (5) anxiety disorder; and (6) panic disorder.[3] (*Id.*) At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 19) Before proceeding to step four, the ALJ assessed plaintiff's RFC as follows:

> The claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) and SSR 83-10 except the claimant cannot climb ladders, ropes, or scaffolds; he can occasionally climb ramps or stairs, stoop, crouch, balance, kneel, and crawl. He may have occasional interaction with supervisors, coworkers, and the public. The claimant is limited to a static work environment; that is, he may be exposed to few changes in the work setting. Finally, he may occasionally operate foot controls with his left lower extremity.

(Tr. 20-21)

Proceeding to step four, the ALJ found that plaintiff was unable to perform his past relevant work as an HVAC technician. (Tr. 27) Proceeding to step five, and after considering testimony from a vocational expert, in addition to plaintiff's age, work experience and RFC, the ALJ found that there were other jobs that exist in significant numbers in the national economy that plaintiff could perform, such as document preparer,

---

[3] Although plaintiff claimed disability due to mental impairments, they are not at issue in deciding the instant motions. (*See* Dkt. No. 15-1 at 4)

6

y

addressing clerk, and printed circuit board assembler. (Tr. 27-28) Accordingly, the ALJ found that plaintiff had not been under a disability within the meaning of the Act. (Tr. 28)

### IV. *Plaintiff's Challenge*

Plaintiff argues that remand is required because the RFC assessment is not fully reflective of the limitations imposed by plaintiff's physical impairments, and is unsupported by substantial evidence and the medical opinions. (*See* Dkt. No. 10-1 at 9-17) Specifically, he argues that the ALJ erred in not including more limitations due to his Achilles' tendonitis and asserts that the ALJ relied on his own lay opinion without seeking additional medical opinions. (*Id.*)

Generally, when assessing a plaintiff's RFC, "[a]n ALJ must rely on the medical findings contained within the record and cannot make his own diagnosis without substantial medical evidence to support his opinion." *Goldthrite v. Astrue*, 535 F. Supp. 2d. 329, 339 (W.D.N.Y. 2008). However, when the medical evidence shows only minor impairments, "an ALJ permissibly can render a common-sense judgment about functional capacity even without a physician's assessment." *Wilson v. Colvin*, 13-CV-6286, 2015 WL 1003933, *21 (W.D.N.Y. Mar. 6, 2015); *see also Matta v. Astrue*, 508 Fed. Appx. 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole.")

Here, the ALJ found Plaintiff retained the ability to perform sedentary work with postural limitations involving no climbing of ladders, ropes or scaffolds and the ability to occasionally climb ramps, stairs, stoop, crouch, balance, kneel, crawl and operate foot

7

controls with his left lower extremity. (Tr. 20-21) The ALJ found that despite improvement in plaintiff's bilateral knee osteoarthritis after surgery, his Achilles' tendonitis beginning in 2015 would continue to limit plaintiff's ability to stand, walk, and perform postural activities. (Tr. 25, 26) In formulating the RFC, the ALJ considered plaintiff's function report and hearing testimony, the objective medical evidence, and the opinions of plaintiff's treating and consulting physicians. (Tr. 21-27)

Initially, the ALJ did rely in part on the opinion evidence in formulating the RFC. Plaintiff's treating physician Kenneth Krackow, M.D., issued a medical opinion on March 2, 2015, three months after plaintiff's right knee replacement and five months before his left knee replacement. (Tr. 395-401) He reported that plaintiff had bilateral knee osteoarthritis and was status post right knee replacement. (Tr. 395, 396) He noted that plaintiff had a good prognosis for his right knee but his left knee prognosis was poor. (Tr. 396) Dr. Krackow reported plaintiff's left knee osteoarthritis limited physical activity due to pain. (Tr. 398) He opined plaintiff could occasionally lift and carry 20 pounds, was limited to stand and/or walk up to two hours in a work day, and had no other limitations (sitting, pushing, pulling, including foot controls). (Tr. 398) Dr. Krackow reported that plaintiff had limitations still present due to his left knee osteoarthritis. (Tr. 399)

The ALJ afforded this opinion partial weight because it was consistent with the objective medical evidence. He further noted that, "although the claimant would receive a successful left knee replacement within a few months, his subsequent Achilles' tendonitis would impose similar restrictions. Consequently, additional restrictions on the operation of left-side foot controls, climbing and postural activities are appropriate." (Tr. 26)

8

With respect to the diagnosis of Achilles' tendonitis, there is only one treatment note in the administrative record, dated August 30, 2016. (Tr. 677-79) Plaintiff saw Dr. Jennifer Gurseke-Deperlo for complaints of pain in his left foot and ankle pain that first arose after his left knee surgery one year earlier. He told the doctor he first had the pain when he awoke after that surgery. He described it as daily, intermittent, and very position based – activity had less effect on it than his foot position did. He mentioned stiffness in the morning and after he rested. He said he could not sleep on his right side because the left ankle was unsupported. His pain improved with a recliner or elevation and when he pointed his foot. There was no mechanical locking, instability, or radiating pain. (Tr. 677) Upon examination, plaintiff's ankle had 5-40 degrees of range and was nontender. He had a stable anterior drawer test. There was edema over his hind foot/Achilles area. Dr. Gurseke-Deperlo found significant tenderness to palpation of his Achilles' tendon midsubstance, but no tenderness at the Achilles' insertion. (Tr. 678) Plaintiff's x-ray review showed no fracture, dislocation, malalignment or degenerative changes. (Tr. 678) Dr. Gurseke-Deperlo assessed plaintiff with left Achilles tendinosis midsubstance with acute tendonitis which was evident clinically by a thickened and tender midsubstance Achilles' tendon due to lack of good blood flow. (Tr. 678) She prescribed Plaintiff a CAM boot and walker. (Tr. 679) She also prescribed a heel lift, physical therapy, stretching, rest and activity modification. (*Id.*)

At the administrative hearing on June 8, 2017, plaintiff testified that he had tendonitis in his ankle since August 2015,[4] and that he was trying to stay off the foot,

---

[4] Although there were no treatment records for the Achilles' tendonitis prior to August, 2016, the ALJ appears to credit plaintiff's testimony that his pain began immediately after his left knee surgery a year prior. (Tr. 25, 59-60)

9

keeping it elevated after walking, and using ice for relief. (Tr. 44) He stated that his ankle would "act up" if he walked a block or block and-a-half, but that his knees "fe[lt] great." (Tr. 53) He could stand for about 20 minutes before having to lift his ankle, and could sit for about 30-45 minutes before the ankle would become tight and uncomfortable. (Tr. 53-54) He could climb stairs and lived in a second-floor apartment, but could not climb a ladder. (Tr. 54-55) Plaintiff stated that he did not get assistance from anyone performing household chores, shopping, preparing meals, or doing laundry. (Tr. 58)

The ALJ considered all of the above evidence in formulating the RFC, including the single treatment note by Dr. Gurseke-Deperlo which revealed largely unremarkable findings and negative left ankle x-rays.[5] Not withstanding the lack of medical treatment, largely benign findings on examination, and conservative measures for relief, the ALJ nonetheless credited many of plaintiff's subjective complaints and incorporated additional restrictions into the RFC specific to the left ankle impairment. (Tr. 25, 27) Where, as here, the medical records do not reflect disabling impairments, an ALJ may render a "common sense judgment" where medical evidence shows relatively minor impairments. Gross v. Astrue, No. 12-CV-6207, 2014 WL 1806779, *18 (W.D.N.Y. May 7, 2014); see e.g., Countryman v. Colvin, No. 15-CV-06131, 2016 WL 4082730, *13 (W.D.N.Y. Aug. 1, 2016) (ALJ was permitted to make common sense judgment regarding plaintiff's reaching limitation despite absence of medical opinion assessing that limitation where record showed relatively minor impairment and where "lack of ... evidence in the record support[ed] a more restrictive limitation"); Lay v. Colvin, No. 14-CV-981, 2016 WL

---

[5] Plaintiff's challenge specifically relates to the impairment of Achilles' tendonitis, as the treatment notes and his own testimony indicates that his bilateral osteoarthritis had resolved after surgery. Accordingly, the Court need not delve into the balance of the medical record. (Tr. 23, 26)

10

3355436, *7 (W.D.N.Y. June 16, 2016) (ALJ was permitted to consider medical records and use common sense judgment to arrive "at a reasonable conclusion regarding [p]laintiff's RFC, as permitted by the [r]egulations"); *Rouse v. Colvin*, No. 14-CV-817, 2015 WL 7431403 at *6 (Nov. 23, 2015) (no per se error where record did not contain "recent medical opinion that specifies [p]laintiff's specific functional abilities, or evidence an RFC report was requested" where "RFC determination was based on substantial evidence because the record contained ample evidence for the ALJ to make a finding on disability, and he was not obligated to seek out additional medical opinions specific to Plaintiff's functional abilities."). Thus, any failure by the ALJ to request the opinion of a medical source does not require remand where "the record contains sufficient evidence from which an ALJ can assess the [claimant]'s residual functional capacity." *Tankisi v. Comm'r of Social Sec.*, 521 Fed. Appx. 29, 34 (2d Cir. 2013) (citing cases). Accordingly, the ALJ did not improperly substitute his own lay opinion in assessing Plaintiff's RFC.

Plaintiff urges the Court to find that the ALJ should have further accepted plaintiff's assertion that he had to take breaks and elevate his legs, which he claims conflicts with the formulated RFC. (*See* Dkt. No. 16)   However, "'[i]t is the function of the [Commissioner], not [reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant,'" and that "[i]f there is substantial evidence in the record to support the Commissioner's findings, 'the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain.'" *Schlichting v. Astrue*, 11 F. Supp. 3d at 206 (quoting *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983); *Aponte v. Sec'y, Dep't of Health and Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984)). While the ALJ credited the majority of plaintiff's testimony,

11

he was not required to accept all of plaintiff's subjective complaints without question. *See Campbell v. Astrue*, 465 Fed. Appx. 4, 7 (2d Cir. 2012) (summary order).

In any event, the ALJ in this case assessed an RFC more restrictive than the record evidence supports. *See, e.g., Byrd v. Saul*, No. 18-CV-01244F, 2020 WL 888044, at *4 (W.D.N.Y. Feb. 24, 2020) ("[I]n the instant case, the medical record is devoid of similar assessments regarding any factors relevant to Plaintiff's ability to remain on-task such that the fact the ALJ's inclusion of the 5% off-task limitation is not based on any medical evidence in the record establishes only that the ALJ assessed Plaintiff with a *more* restrictive RFC than the record supports.") (emphasis in original). And plaintiff does not point to any evidence that would support a more restrictive RFC, as is his burden to do. *See Smith v. Berryhill*, 740 Fed. Appx. 721, 726 (2d Cir. 2018).

In sum, the Court finds that ALJ did not rely on his own lay opinion, but rather, properly weighed the evidence as a whole when making the RFC determination. The ALJ's decision is therefore supported by substantial evidence and free of legal error.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (Dkt. No. 10) is denied and the Commissioner's motion for judgment on the pleadings (Dkt. No. 15) is granted.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated:   June 5, 2020
         Buffalo, New York

                                                    _____
                                                    MICHAEL J. ROEMER
                                                    United States Magistrate Judge